[L.A. No. 30042. In Bank. Oct. 15, 1973.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Plaintiff and Appellant, v.
JOYCE JACOBER et al., Defendants and Respondents.

[S.F. No. 22933. In Bank. Oct. 15, 1973.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Plaintiff and Appellant, v.
GAIL STAPLER, as Administratrix, etc., et al.,
Defendants and Respondents.

[L.A. No. 30045. In Bank. Oct. 15, 1973.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Plaintiff and Appellant, v.
VIRGINIA LOUISE THOMPSON et al., Defendants and Respondents.

## Counsel

Spray, Gould & Bowers, Daniel O. Howard, James L. Crandall, Bledsoe, Smith, Cathcart, Johnson & Rogers and Robert A. Seligson for Plaintiff and Appellant.

Herbert H. Hiestand, Jr., Burnhill, Rode, Moffitt & Moore, Cyril Viadro, Parker, Stanbury, McGee & Roberts and White McGee for Defendants and Respondents.

## Opinion

**TOBRINER, J.**—These three appeals, consolidated for hearing before this court, involve the interpretation of a form policy of automobile liability insurance issued by plaintiff State Farm Mutual Automobile Insurance Company. In each of these cases the owner of an automobile, while riding as a passenger in his own car, was injured or killed in an accident allegedly caused by the negligence of the driver of the car. These owners held policies issued by State Farm which provided coverage to protect permissive users of the owned automobile from liability to "other persons," but which excluded liability coverage for "bodily injury to the insured." In these actions for declaratory relief State Farm sought a judicial determination as to whether that exclusion avoided any obligation on its part to defend the drivers accused of negligence and to pay any judgments which might be rendered against them. The trial courts, in each instance, found against State Farm, which appeals from those judgments.

For the reasons discussed below, we affirm the judgments of the trial courts. The State Farm policy protects a permissive user of the insured car against liability to "other persons" and, from the permissive user's point of view, the owner of the car is clearly among the "other persons" against whom he may reasonably expect, and claim, protection. Although State Farm attempts to avoid liability by relying on a clause excluding cover-

age for injuries "to the insured," this exclusionary provision fails to satisfy the established requirement that such a provision must be "conspicuous, plain and clear" in order to relieve the insurer of liability. As we shall point out, the exclusionary provision in question is susceptible of at least three distinct interpretations; indeed, the insurer itself suggests two differing readings.

■ As we explain, we have no occasion to determine which of the various proposed interpretations of the clause is the "correct" one, for under settled principles so long as coverage is available under any reasonable interpretation of an ambiguous clause, the insurer cannot escape liability. As a number of decisions have previously recognized, the exclusionary clause at issue—negating coverage for injuries sustained by "the insured"—may be interpreted as withdrawing coverage only for injuries to that "insured" who himself claims the protection of the policy (the permissive users in the instant cases); the exclusion, as written, could well be thought inapplicable when a car owner is injured by the carelessness of a permissive user. Given this possible interpretation, we conclude that the language of exclusion does not permit State Farm to deny its duties of defense and indemnification. Accordingly, we affirm the judgments in favor of the claimants rendered by the superior court in each of the cases before us.

### 1. Statement of Facts

#### a. State Farm Mut. Auto. Ins. Co. v. Jacober

On April 11, 1968, State Farm issued an automobile liability policy to Warren and Joyce Jacober. On July 2 of that year Roger Dell was driving the Jacober's car with Warren's permission; Warren Jacober, three of his children, and two of Dell's children were passengers. The car struck a power pole, causing Warren's death and injuring the other occupants. Joyce Jacober, Warren's wife, and his children (appearing through guardians ad litem) filed suit against Dell for wrongful death. State Farm undertook to defend this action under a nonwaiver of rights agreement with Dell.

Before the wrongful death action went to trial, however, State Farm instituted the present proceeding for declaratory relief against the Jacobers, the Dells, the Volkswagen Insurance Company, Dell's carrier. The Los Angeles Superior Court found that State Farm owed a duty to defend the wrongful death action against Dell and, subject to the policy limits,

to pay any liability found owing from Dell to the Jacobers; State Farm appeals from this judgment.[1]

### b. *State Farm Mut. Auto. Ins. Co.* v. *Stapler*

State Farm issued an automobile liability policy to Paul Smith. On May 18, 1968, while this policy was in effect, Smith was riding in his own car which was being driven, with Smith's permission, by James Stapler. An accident killed Stapler and injured Smith. Smith subsequently sued Gail Stapler as administratrix of the estate of James Stapler. State Farm then brought the present action for declaratory relief against Smith and Gail Stapler. The Alameda Superior Court adjudged that the policy did not exclude coverage for the injuries of Smith, and State Farm appeals from that judgment.

### c. *State Farm Mut. Auto. Ins. Co.* v. *Thompson*

On September 1, 1966, State Farm issued an automobile liability policy to Gail Thompson. On February 4, 1967, Gail and his son Todd were passengers in the Thompson's car, which was being driven with Gail's permission by Ed Rhoades. A collision resulted in Gail's death and injuries to Todd. Virginia Thompson, Gail's wife, and Todd Thompson filed suit against Rhoades for wrongful death and for Todd's injuries. State Farm then brought an action for declaratory relief against the Thompsons, Rhoades, and Rhoades' insurance carrier, Government Employees Ins. Co. The Ventura Superior Court found that State Farm's policy provided coverage for damages for the death of Gail and the injuries to Todd, and further held that as to these claims State Farm's coverage was primary, and Government Employees' coverage excess. State Farm appeals from this judgment.[2]

---

[1]The record in this case does not indicate whether Roger Dell, his children, or his insurance carrier, were served with process in the declaratory relief action and shows no appearance on their behalf. The Jacobers alone appear as respondents on this appeal.

[2]The Thompsons' wrongful death action has been settled for $40,000, with State Farm and Government Employees each contributing $20,000. State Farm's policy has a limit of $25,000; Government Employees' a limit of $50,000. Thus, if we uphold the trial court and find State Farm's coverage is primary, State Farm will pay Government Employees $5,000. If we find State Farm's policy excludes coverage for the death of Gail Thompson, Government Employees will reimburse State Farm for its $20,000 contribution to the settlement.

State Farm has also settled Todd Thompson's claim for personal injuries without contribution from Government Employees Insurance Company.

d. *Relevant provisions of the State Farm insurance policies.*

In all relevant particulars the policies issued by State Farm to Warren and Joyce Jacober, Paul Smith, and Gail Thompson are identical. In the insuring agreement, the company agrees "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (a) bodily injury sustained by other persons" arising from the use of the owned automobile, and to defend all suits alleging such bodily injury.[3] Bodily injury, as defined in the policy, includes death. In subsequent sections the policy refers to coverage for bodily injury as "coverage A."

Following the insuring agreement, the policy defines the term "insured" under coverage A: "the unqualified word 'insured' includes: (1) the named insured, and (2) if the named insured is a person or persons, also includes his or their spouse(s), if a resident of the same household, and (3) if residents of the same household, the relatives of the first person named in the declarations, or of his spouse, and (4) any other person while using the owned automobile, provided the operation and the actual use of such automobile are with the permission of the named insured or such spouse and are within the scope of such permission, and (5) . . . any person or organization legally responsible for the use of such owned automobile by an insured. . . ."

Following these definitions the policy lists 16 exclusions. The exclusion relied upon by the insurer in the present cases is designated by the letter "i"; it states that the insurance does not apply under "coverage A, *to bodily injury to the insured* or any member of the family of the insured residing in the same household as the insured." (Italics added.) We take note also of two other exclusions which use the term "insured," since cases construing such exclusions may be relevant to the construction of exclusion

---

[3]The specific language of the policy providing for liability coverage reads as follows:

"State Farm Mutual Automobile Insurance Company . . . in consideration of the premium paid . . . agrees with the named insured, subject to the provisions of the policy:

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury sustained by other persons, and (B) property damage caused by accident arising out of the ownership, maintenance or use, including loading or unloading, of the owned automobile; and to defend, with attorneys selected by and compensated by the company, any suit against the insured alleging such bodily injury or property damage and seeking damages which are payable hereunder even if any of the allegations of the suit are groundless, false or fraudulent. . . ."

"i": exclusion "h" bars coverage, under specified conditions, for "bodily injury to any employee of the insured";[4] and exclusion "j" denies liability coverage for "injury to or destruction of property owned or transported by the insured. . . ."[5]

2. *In agreeing to pay for all liability resulting from bodily injury sustained by "other persons," the insuring clause of the policy provides coverage to a permissive user for injuries sustained by the owner of the car.*

Vehicle Code section 16451 requires that an automobile liability policy "insure the person named therein and any other person, as insured, using any owned motor vehicle with the express or implied permission of said assured" to the extent provided in that section. ■ Pursuant to this mandate, the State Farm policy defines permissive users as persons insured under the policy, and agrees "[to] pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury sustained by *other persons*. . . ." (Italics added.)

The preponderance of authority supports the interpretation that, with respect to the driver, who is insured as a permissive user, the named insured would normally be considered to be an "other person"; his injuries therefore would be covered by the policy. "The courts feel that the case must be examined from the point of view of the *driver,* who expects and demands protection in such an instance, it not mattering to him who the plaintiff is, but rather, the matter of consequence being that he has become liable to pay a judgment and needs the benefit of the insurance." (7 Appleman, Insurance Law and Practice (1962) § 4409, p. 381.) (Italics added.) In accord with this position, the California decisions indicate that a policy will be construed to protect an additional insured against a claim for injuries suffered by a named insured unless such a risk is expressly and unambiguously excluded. (See *Atlantic Nat. Ins. Co.* v. *Armstrong* (1966) 65 Cal.2d 100, 108-109 [52 Cal.Rptr. 569, 416 P.2d 801]; *Bachman* v.

[4]Exclusion "h" in full reads as follows: "This insurance does not apply under: coverage A, (1) to bodily injury to any employee of the insured arising out of and in the course of (i) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law, or (ii) other employment by the insured; or (2) to any obligation for which the insured or his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law."

[5]Exclusion "j" states that "This insurance does not apply under: coverage B [liability for property damage], to injury or destruction of property owned or transported by the insured, or property rented to or in charge of the insured other than a residence or private garage injured or destroyed by a private passenger automobile covered by this policy."

*Independent Indem. Co.* (1931) 214 Cal. 529 [6 P.2d 943]; *P. E. O'Hair & Co.* v. *Allstate Ins. Co.* (1968) 267 Cal.App.2d 195, 198 [72 Cal.Rptr. 690]; *Travelers Ins. Co.* v. *Norwich Union Fire Ins. Soc.* (1963) 221 Cal. App.2d 150 [34 Cal.Rptr. 406].) The policy's cryptic reference to "other persons" clearly does not qualify as an express and unambiguous exclusion of coverage of claims by a named insured to an additional insured.

We conclude, therefore, that the injured persons in the cases at hand are among those "other persons" whose damage claims against the drivers are covered by the insuring clause of the State Farm policy.

3. ▮ *The exclusionary clause of the policy, withholding coverage for injuries "to the insured," is not "conspicuous, plain and clear" and is reasonably susceptible of an interpretation which would permit recovery for injuries to the owner of the car; accordingly, the insurer cannot rely on this provision to escape liability in the instant cases.*

Having determined that the injuries in the instant cases fall within the insuring clause of the State Farm policy, we turn to the insurer's principal contention—that exclusion "i" of the State Farm policy, which disclaims coverage for "bodily injury to the insured. . . ." is effective to preclude coverage in the three accidents at issue here. State Farm maintains that Vehicle Code section 16454, which provides that "[a]ny motor vehicle liability policy need not cover any liability for injury to the assured . . ." authorizes this exclusion of coverage for injuries to a named insured, even if he is a passenger.[6]

▮ In evaluating this contention, we begin with the fundamental principle that an insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As we have declared time and again "any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect." (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 269 [54 Cal.Rptr. 104, 419 P.2d

[6]No statutory provision defines the term "assured" as used in Vehicle Code section 16454, and consequently the statutory language bears the same level of ambiguity, and is subject to the same conflicting interpretations, as the word "insured" in exclusion "i" of State Farm's policy. (See *infra.*) It is clear, however, that whatever the scope of the statutory "assured" in section 16454, State Farm's exclusion ostensibly extends beyond the bounds of this provision, for exclusion "i" purports to bar coverage for injuries not only to the "insured" but also to "any member of the family of the insured residing in the same household as the insured." Insofar as the policy attempts to exclude coverage for a permissive user that is not authorized by section 16454, such exclusion would conflict with Vehicle Code section 16451 and would be invalid. (See *Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31 [307 P.2d 359].)

168]); thus, "the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language." (*Harris* v. *Glens Falls Ins. Co.* (1972) 6 Cal.3d 699, 701 [100 Cal.Rptr. 133, 493 P.2d 861].) The exclusionary clause "must be *conspicuous, plain and clear.*" (*Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 878 [27 Cal.Rptr. 172, 377 P.2d 284].) (Italics added.)

Although the insurer contends that the exclusionary clause at issue meets these exacting standards of clarity, the parties have advanced no less than *three* alternative interpretations of the clause, each of which can claim some basis in the language of the policy and which find some support in prior judicial rulings. Claimants contend that the term "the insured" in exclusion "i" may be interpreted as referring only to that person, whether named or additional insured, who faces potential liability and who claims the protection of the policy with regard to the accident in question; in the cases at hand, only the drivers assert the protection of the policy and thus, under this interpretation, the exclusion would not bar coverage for the injuries to the owners of the vehicles. State Farm, on the other hand, suggests two alternative interpretations: (1) that the term "the insured" includes all persons coming within the definition of "insured" as that term is defined in the policy, or (2) that the term "the insured" means those persons defined as the "named insured" under the policy. If the latter two were the only possible interpretations, the exclusionary clause would bar coverage in the instant case.

Although all the parties to this litigation have urged the court to determine which of these alternative interpretations is the "proper" interpretation of the exclusionary clause at issue, we are not required, in deciding the cases at bar, to select one "correct" interpretation from the variety of suggested readings. To affirm the trial courts' decisions in favor of claimants, we need not determine that the two interpretations proposed by the insurer are not possible, or even reasonable, interpretations of the clause in question, although—as discussed in the margin—we do note that difficulties are presented by either of the insurer's proffered constructions of the provision.[7] Instead, even assuming that the insurer's suggestions are reasonable

---

[7]State Farm at first suggests that the definition of "insured" contained in the policy should be inserted bodily into exclusion "i"; under this construction the term "insured" in the exclusion includes (a) the named insured, (b) if residents of the same household, his spouse, and any relative of the named insured or of his spouse, and (c) any permissive user of the automobile. Yet exclusion "i" expressly excludes not only the "insured" *but also* "any member of the family of the insured residing in the same household as the insured." Consequently, by this interpretation, exclusion "i" becomes partially redundant; it excludes the named insured, members of his

interpretations which would bar recovery by the claimants, we must nonetheless affirm the trial courts' finding of coverage so long as there is any other reasonable interpretation under which recovery would be permitted in the instant cases. ■ "If semantically permissible, [an insurance] contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates." (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437 [296 P.2d 801, 57 A.L.R.2d 914].)

■ Applying this principle, we have concluded that, as claimants suggest, the policy's exclusion of "bodily injury to the insured" may reasonably be interpreted as referring only to injuries sustained by the party facing liability for an alleged misuse of the vehicle, that is, the party who seeks a legal defense and indemnity from the insurer. In common parlance such an individual—even though only a permissive user—would normally be considered "the insured" in these circumstances, and we believe that, as written, the present exclusionary clause could reasonably be understood as referring to injuries sustained by such a person. Because under this interpretation coverage would not be excluded for the injuries in the instant case, we hold that the trial courts correctly declared that the insurer was bound to its duty to defend and indemnify.

The decision of the Court of Appeal in *Farmers Ins. Exch.* v. *Frederick* (1966) 244 Cal.App.2d 776 [53 Cal.Rptr. 457] directly supports this conclusion. The Farmers' policy in that case also excluded liability for "bodily injury to the insured," and defined insured in the same fashion as the State Farm policies. Frederick, the named insured, was riding in his own truck when he was injured as a result of the negligence of Edwards, the permissive driver. The majority decision of the Court of Appeal held the policy covered Frederick's injuries.

---

family residing in his household, and "any member of the family of the insured residing in the same household as the insured."

The insurer's alternative interpretation, equating "insured" in exclusion "i" with "named insured" or "*at least* the named insured," presents a different range of problems. The precise term "named insured" appears in the policy in no less than 30 places, thereby creating an inference that when the unqualified single word "insured" is used, "insured" means something other than "the named insured." In fact, usually when the unqualified word "insured" appears, it is clear from the context that it means either (a) all persons defined as insured, or (b) that person claiming protection or coverage under the policy as an "insured." We find no provision in the policy in which the unqualified word "insured" is used to mean "the named insured." And State Farm's suggestion that the term means "*at least* the named insured" is simply a confession that the meaning of the exclusion may differ in other undefined situations: an admission of its ambiguity.

The court stated: "Farmers' claim of exclusion has a complexion of plausibility because Frederick was an occupant of the truck at the time of the accident. . . . However, if Frederick or his spouse or both were negligently hit by their insured truck, which was being driven by Edwards with their permission, while either or both were walking through a pedestrian zone in another part of town, any semblance of plausibility would vanish. . . . If Farmers intended to exclude Frederick or his spouse by contract from claiming benefits to which any member of the public is automatically entitled, then it seems to us that its policy must do more than use a word of art such as 'insured,' which, when read in the context of the whole policy, has an ambiguous application to the facts at bench and to many other situations which can be posed. . . . In our opinion, if Farmers, by the exclusion meant to include within its operative effect injuries to the named insured even though some other insured was driving, the language of the exclusion must be such as to leave no doubt that the definition of 'insured' is not merely for contractual convenience, but that the named insured can never recover under the policy, or recover only in certain situations, irrespective of who drives. The exclusion at bench is not that certain." (244 Cal.App.2d at pp. 780-782.)[8]

The reasonableness of interpreting "the insured" as referring to the party facing potential liability finds additional support in a series of cases construing two other exclusionary clauses of the State Farm policy: exclusion "h," which disclaims coverage for injuries to any "employees of the insured," and exclusion "j," which withholds coverage for damage to "property owned . . . by the insured." The several California cases that have construed provisions excluding coverage for injuries to employees of the "insured" have held that such language "operates to exclude coverage only in cases where the injured party is the employe of the *particular* insured . . . who is seeking protection under the policy." (*Pleasant Valley Assn.* v. *Cal-Farm Ins. Co.* (1956) 142 Cal.App.2d 126, 132 [298 P.2d 109]; accord: *U. S. Fire Ins. Co.* v. *Transport Indem. Co.* (1966) 244 Cal. App.2d 110, 113-115 [52 Cal.Rptr. 757]; *Campidonica* v. *Transport*

---

[8]State Farm seeks to distinguish *Frederick* on the basis of the language used in the insuring clause. The Farmers Insurance policy construed in *Frederick* provided coverage for sums "which the insured becomes legally obligated to pay because of bodily injury to *any* person." (Italics added.) The State Farm policy, however, refers to "bodily injury sustained by *other persons*." (Italics added.) We find this minute distinction in language inconsequential. Moreover, since an insured is never legally obligated to pay himself, the Farmers policy, in referring to "any person," necessarily means "any person other than the insured claiming the protection of the policy." Likewise the State Farm policy can be reasonably construed to provide coverage for injury sustained by persons other than the insured claiming the protection of the policy.

*Indemnity Co.* (1963) 217 Cal.App.2d 403, 407 [31 Cal.Rptr. 735]; see *Paul Masson Co.* v. *Colonial Ins. Co.* (1971) 14 Cal.App.3d 265, 270 [92 Cal.Rptr. 463].)

*Globe Indem. Co.* v. *Universal Underwriters Ins. Co.* (1962) 201 Cal. App.2d 9 [20 Cal.Rptr. 73], reached the same conclusion in construing a policy excluding coverage for "injury to . . . property owned by the insured" (exclusion "j"). A permissive user borrowed the named insured's car and negligently damaged it. The named insured sued the permissive user for damage, and the Court of Appeal held that "the policy protects [the permissive user] because the damaged car was not 'property owned' by him but by [the named insured]." (201 Cal.App.2d at p. 19.)

Finally, we point out that any interpretation which would deny coverage in the cases at hand would create a serious and arbitrary gap in insurance protection. As a general principle, a California motorist can proceed with confidence that if he sustains injuries arising from someone else's negligent operation of a vehicle, he can obtain financial redress from the insurance policy covering that vehicle; if no such coverage exists, the injured motorist can recover under his own uninsured motorist protection. When the *owner* of an automobile is injured by the negligence of an uninsured driver of that vehicle, however, he may be unable to recover under an uninsured motorist clause. (See *Hale* v. *State Farm Mut. Auto. Ins. Co.* (1967) 256 Cal.App.2d 177, 182-183 [63 Cal.Rptr. 819].)

To deny recovery under the owner's policy, when he is injured by the uninsured driver of the owner's car, would be to create a class of persons who sustain injuries arising from the negligent operation of a vehicle, but are denied insurance protection for such injuries. This result would contravene the public policy recognized in *Atlantic Nat. Ins. Co.* v. *Armstrong* (1966) 65 Cal.2d 100, 106 [52 Cal.Rptr. 569, 416 P.2d 801], in which we stated that "A primary purpose of financial responsibility laws is to protect 'that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of the highways by others.' [Citations omitted.] This goal is no less subverted by limiting the class of persons whose injuries are compensable than by limiting the class of drivers who are insured." (65 Cal.2d at p. 106.)

We perceive no rational basis for this gap in coverage. The insurance policy in general affords the permissive user the same protection against liability as the named insured, and such equality in treatment appears an implicit command of Vehicle Code section 16451. How, then, can the insurer justify a departure from this equality of treatment, and a denial of

protection to the permissive user, in those instances in which the injured person is among the named insureds?

The insurer's only response to the above query is to assert that to permit the named insured to recover for his own injuries would transform the liability policy into a health and accident policy. This answer is plainly specious. Under health and accident insurance, the injured person recovers without proof of fault, such recovery resting on his contract rights as an insured under the policy. In the present cases, the named insured can obtain damages only for injuries proximately caused by the *driver's* negligence; his recovery does not rest upon the contract rights of the named insured, but upon the driver's right to coverage against liability arising from his use of the vehicle. We conclude that the state policy favoring adequate financial protection for victims of injuries arising out of the use of motor vehicles, and opposing arbitrary gaps in insurance protection, requires that we interpret the State Farm policy to afford coverage in the instant cases.

In the face of these numerous precedents and weighty policy considerations, State Farm contends that the reference to "injuries to the insured" in its exclusionary clause cannot reasonably be interpreted as omitting injuries to the named insured; the insurer cites several cases to support its position. In both *Farmers Ins. Exch.* v. *Brown* (1967) 252 Cal.App.2d 120 [60 Cal.Rptr. 1] and *Farmers Ins. Exch.* v. *Geyer* (1967) 247 Cal. App.2d 625 [55 Cal.Rptr. 861], two principal cases relied on by the insurer, however, the exclusionary clause specifically withheld coverage for injuries to the "named insured" rather than merely "the insured"; such a clause clearly does not share the ambiguity of the provision at issue here. In *Hale* v. *State Farm Mut. Auto. Ins. Co.* (1967) 256 Cal.App.2d 177 [63 Cal.Rptr. 819], the Court of Appeal, in construing a policy virtually identical to that involved in the instant case, treated the *Brown* and *Geyer* cases as controlling, completely failing to consider that the replacement of the unambiguous "named insured" by the unqualified "insured" created new problems of construction.[9] We find the precedents relied on by State Farm similarly unpersuasive.[10]

---

[9] In *American Home Assur. Co.* v. *State Farm Mut. Auto. Ins. Co.* (1969) 1 Cal. App.3d 355 [81 Cal.Rptr. 732], Mrs. Crawford, the named insured, was injured while unloading boxes onto the parking lot of McColl's Dairy. She sued the dairy, which unsuccessfully claimed the protection of her State Farm policy as an additional insured. The court first held, correctly, that the dairy was not engaged in loading or unloading the vehicle, and hence was not an additional insured under the policy —a holding which was sufficient, in itself, to justify the denial of coverage. The court went on, however, to also hold that "the exclusionary clause should be construed to refer only to injuries sustained by the named insured," citing *Brown, Geyer* and *Hale*. (1 Cal.App.3d 355, 359-360.)

[10] *Travelers Indem. Co.* v. *Colonial Ins. Co.* (1966) 242 Cal.App.2d 227 [51 Cal.Rptr. 724], construed an insurance policy which contained no exclusionary pro-

Finally, the insurer contends that the term "the insured" cannot reasonably be interpreted as applying only to those persons claiming protection under the policy, for under such an interpretation the exclusion would become a useless addition to the policy. The insurer argues that since a person cannot sue himself for injuries he negligently inflicts on himself, the claimants' proposed interpretation of the exclusion would render the clause nugatory. A layman attempting to interpret an insurance policy, however, is not likely to have the legal sophistication to deduce what an insurance company is attempting to accomplish by an ambiguous exclusionary clause; it is on just such grounds that our cases have uniformly required that exclusions be "conspicuous, plain and clear." (*Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 878 [27 Cal.Rptr. 172, 377 P.2d 284].) If an insurer intends to exclude coverage for injuries to the owner of the insured vehicle, even though incurred while some other insured is driving, it must draft its policy to avoid any misinterpretation by the average layman.

In sum, we conclude that the exclusionary clause relied on by the insurer in the instant case is by no means phrased "in clear and unmistakable language" (*Harris* v. *Glens Falls Ins. Co.* (1972) 6 Cal.3d 699, 701 [100 Cal.Rptr. 133, 493 P.2d 861]) and can hardly be characterized as "conspicuous, plain and clear." (*Steven* v. *Fidelity & Casualty Co.* (1962) 58 Cal.2d 862, 878 [27 Cal.Rptr. 172, 377 P.2d 284].) ▮ As we have seen, numerous courts have recognized that the provision at issue is at least reasonably susceptible of an interpretation which would exclude coverage only for injuries sustained by the "insured" seeking the protection of the insurance policy in the particular case at hand. We agree, and we therefore conclude that the trial courts properly held the insurer to its duty

---

vision, but specified in the *insuring language* that the policy covered injuries to any person "other than the insured or his employees." The court held this language excluded coverage for injuries to the named insured caused by the negligence of an employee of an additional insured. In *Paul Masson Co.* v. *Colonial Ins. Co.* (1971) 14 Cal.App.3d 265 [92 Cal.Rptr. 463], however, the court construed the same insurance policy in a case in which an *employee* of the named insured was injured by the employee of an additional insured; coverage was extended on the ground that "insured" meant only that person, or his employees, claiming protection under the policy. The court distinguished *Travelers Indem. Co.* v. *Colonial Ins. Co.* as involving an injury to a named insured, instead of an employee.

In *Tenopir* v. *State Farm Mutual Co.* (1968) 403 F.2d 533, the Ninth Circuit, applying Alaska law, construed the exclusion in the standard State Farm policy. The court denied protection to a permissive user when sued for injuries by the named insured. The opinion begins by quoting and relying upon the definition of "insured" in the policy, but then equivocates, and concludes that "whatever else the term 'the insured' may include in the exclusion clause, it does include the named insured." (403 F.2d at p. 536.)

to defend and indemnify claimants. Language to the contrary in *American Home Assur. Co* v. *State Farm Mut. Auto. Ins. Co.* (1969) 1 Cal.App.3d 355 [81 Cal.Rptr. 732], *Hale* v. *State Farm Mut. Auto. Ins. Co.* (1967) 256 Cal.App.2d 177 [63 Cal.Rptr. 819] and *Travelers Indem. Co.* v. *Colonial Ins. Co.* (1966) 242 Cal.App.2d 227 [51 Cal.Rptr. 724] is disapproved.

The insurance carrier finds itself in the unenviable position of seeking refuge in an abstruse exclusionary clause. As Daphne took flight from the amorous pursuing Apollo only to be transformed into a laurel tree, the carrier's flight into an ambiguous clause must, because of its very nature, result only in the carrier's encasement in the wooden limbs of liability.

The judgments are affirmed.

Wright, C. J., McComb, J., Mosk, J., and Burke, J., concurred.

**SULLIVAN, J.**—I dissent.

The central question which we face in these three cases is whether the policy of automobile liability insurance issued by State Farm Automobile Insurance Company (State Farm) covers the claim for personal injuries made by the named insured who purchased the policy (i.e., Stapler), or, as the case may be, the claim for wrongful death made by the heirs of the named insured (i.e., Jacober and Thompson).[1] The majority conclude in all three cases that such claims are covered. In essence, they achieve this end by restructuring the policy provisions, examining them "from the permissive user's point of view" (majority opn., *ante,* at p. 196); as a result one would think the driver had purchased the policy. The majority complete this technique by then simultaneously casting the named insured in the role of the "other person"; as a result they would have us think he had been freed from the binding effect of the very contract he had entered into. Having thus triggered the insuring clause of the policy, the majority then determine that it cannot be deactivated by any words of exclusion because they are not "conspicuous, plain and clear" (majority opn., *ante,* at p. 197); yet at the same time, despite their probing for more than one meaning, they carefully eschew selecting which of their unearthed meanings is the "correct" one. I must admit that this felicitous interpretation

---

[1]For convenience, I refer to each of the three actions for declaratory relief before us by the first-named defendants therein. The relevant terms of the three policies involved are identical in each instance and are set forth *infra.* I point out that the question before us concerns only the claim made by the named insured or his heirs. For example, in *Thompson,* State Farm raises no issue as to coverage of the claim for personal injuries made by Todd Thompson, son of the deceased named insured.

will have instant appeal to countless policyholders who I dare say had no idea they were obtaining with their automobile insurance benefits akin to those of an accident policy. But with all due respect for the views of my colleagues, I cannot join them in what I am strongly convinced is a construction of the policies completely at odds with accepted canons of interpretation and applicable rules of law.

The controlling provisions of these identical policies are contained in two clauses: the insuring clause, including applicable definitions of its terms, and an exclusionary clause. I set them forth as follows: *First,* the policy states that State Farm agrees "[t]o pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages because of (A) bodily injury [including death][2] sustained by *other persons* . . . caused by accident arising out of the ownership, maintenance or use . . . of the owned automobile . . . ." (Italics added.) Defining an insured, the policy provides that under coverage for bodily injury, referred to as "Coverage A," the "unqualified word 'insured' includes (1) the named insured, and . . . (4) any other person while using the owned automobile, provided the operation and the actual use of such automobile are with the permission of the named insured . . . and are within the scope of such permission." *Second,* the policy provides that *"This insurance does not apply under:* . . . (i) coverage A, to bodily injury to the insured or any member of the family of the insured residing in the same household as the insured."[3] (Original italics.)

Since no extrinsic evidence was offered or received as an aid in interpreting the above provisions of the policy, we must make an independent determination of their meaning, "a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect. (See Civ. Code, §§ 1635-1661; Code Civ. Proc., §§ 1856-1866.)" (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].)

I first turn to the insuring clause since it is obvious that if the claims for personal injuries or wrongful death made by the named insured or his heirs, as the case may be, are not covered by State Farm's basic agreement to pay, any reference to the exclusionary clause is unnecessary.

---

[2]Under its "definitions" the policy provides that "Bodily Injury—means bodily injury, sickness or disease including death at any time resulting therefrom."

[3]The first clause set forth above is found at the beginning of the policy under the bold type heading "INSURING AGREEMENT I—THE OWNED AUTOMOBILE." The definition of an insured is found under the bold type heading "DEFINITIONS—INSURING AGREEMENTS I AND II." The second clause is found under the bold type heading "EXCLUSIONS—INSURING AGREEMENTS I AND II."

I shall point out that such claims are clearly not covered. I also propose to show that my conclusion in this respect is confirmed by an examination of the exclusionary clause.

Since State Farm has promised to pay on behalf of the *insured* claims for bodily injuries sustained by *other persons,* the terms "insured" and "other persons" must be read with reference to each other. In view of the fact that the word "insured" as used in the insuring clause is not qualified by any additional language, we must apply the above definition of the word "insured" according to the direction of the policy. Thus it is beyond any question that in the clause under examination the word "insured" includes the named insured and the permissive user. Indeed, the majority implicitly concede that this is correct since they state that the permissive user—one of the categories of the above definition—is a person insured under the policy. Thus under the facts before us, in the *Jacober* case, Warren Jacober, the named insured and Roger Dill, the driver, were both insured; in the *Stapler* case, Paul Smith, the named insured and James Stapler, the driver, were both insured; and in the *Thompson* case, Gail Thompson, the named insured and Ed Rhoades, the driver, were both insured.

What coverage did State Farm engage to afford these six insured persons? The policy provides an answer in plain unmistakable language: "To pay on behalf of the *insured* all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injuries *sustained by other persons."* (Italics added.) *Not* for bodily injuries sustained by the named insured or the permissive user; not for bodily injuries sustained by one or more of the six persons enumerated above; but for bodily injuries sustained by persons *other* than the named insured and the driver, *other* than the six persons enumerated above. The term "other persons" therefore stands in contrast to the term "insured"; and "other persons" means those *not* having the status of an insured. The terms are mutually exclusive. It is crystal clear that under the insuring clause, State Farm is bound to insure the named insured and the driver only with respect to bodily injuries sustained by persons *other* than the named insured or the driver. It is an ineluctable conclusion from the foregoing that the policy does not insure against claims for personal injuries or death made by the named insured or his heirs.

This is sufficient to answer the principal question before us for if the insuring clause does not operate to cover the claims made here for personal injuries and death, it is of course unnecessary to consider the effect of the exclusionary clause. Nevertheless, I find it convenient to examine the exclusionary clause since it corroborates the above interpretation of the

insuring clause by stating plainly, *"This policy does not apply under* [original italics] . . . . (1) coverage A, to bodily injury to the *insured* [italics added] or any member of the family of the insured residing in the same household as the insured . . . ."

In the cases at bench, since the word "insured" includes the three named insureds, Jacober, Smith and Thompson, and their respective permissive-user drivers, Dell, Stapler, and Rhoades, it follows that none of the six drivers nor any members of their families residing in the same household can claim damages for bodily injuries caused by an accident arising out of the operation of the automobile involved. But we need not consider the exclusionary clause that broadly. This much is clear beyond any dispute: that the policy does not apply to a claim for bodily injuries or death made by the *named insured* or his heirs as the case may be. We need not go any further. This determination is not only fully consistent with, but it also wholly supports, my conclusion that the insuring clause does not cover the instant claims.

Faced with the clear meaning of the language in the policies, the majority attempt to subvert it in two ways. First they say that in order to construe the word "insured" in the insuring clause, the cases must be examined from the point of view of the person facing liability, that is, the permissive user who is driving the vehicle. From his point of view, they conclude, a named insured who suffers bodily injuries while an occupant in the vehicle is among the group of "other persons" referred to in the insuring clause of the policies. The effect of the majority's conclusion is to remove the term "named insured" from the definition of an "insured" stated in the policies. Thus the majority, in construing the language of the insuring clause, ignore their duty "simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted. . . ." (Code Civ. Proc., § 1858; see *Jensen* v. *Traders & General Ins. Co.* (1959) 52 Cal.2d 786, 790 [345 P.2d 1]; *Estate of Townsend* (1963) 221 Cal.App.2d 25, 27 [34 Cal.Rptr. 275]; *S & M Lamp Co.* v. *Lumbermens Mutual Casualty Co.* (1962) 199 Cal.App.2d 446, 453 [18 Cal.Rptr. 633].)

Neither is the result of the majority opinion supported by any of the cited cases. The cases relied upon construe language in automobile liability policies which differs significantly from the policy provisions in the cases at bench. Unlike the policies here, none contains the term "other persons" which, as I have explained, must be construed with reference to the word "insured." By contrast, the cases relied on by the majority construe the meaning of the terms "*any* person" or "*any* person or persons." (Italics added.) Reading these words together with the preceding word "insured"

they generally concluded that the policies there involved covered claims for injuries made by a named insured, who fell within the term "any" person, there being no effective exclusionary clause to negate this result.

In *Atlantic Nat. Ins. Co.* v. *Armstrong* (1966) 65 Cal.2d 100, 107 [52 Cal.Rptr. 569, 416 P.2d 801], we merely held invalid an exclusion of liability to the driver of the rented vehicle for injuries sustained by an occupant in the vehicle because the attempted exclusion conflicted with statutory law. However, *Atlantic* (p. 109) specifically left open the question whether a policy may exclude coverage for injuries suffered by an insured; thus it could not have decided what language is needed to accomplish such an exclusion.

The remaining cases cited by the majority are distinguishable in that they concerned the construction of the term "any person" in an insuring clause as compared to the term "other persons" found in the policies here. For example, the insuring language in *Bachman* v. *Independence Indem. Co.* (1931) 214 Cal. 529, 530 [6 P.2d 943], contained the term "any person or persons." Characterizing this language as "very broad, and perhaps somewhat unusual," the court held that the policy provided coverage to a permissive user for liability to heirs of the named insured in a wrongful death action. In *Travelers Ins. Co.* v. *Norwich Union Fire Ins. Soc.* (1963) 221 Cal.App.2d 150, 151 [34 Cal.Rptr. 406], it was held that the insurer was required to defend an action brought by its named insured against an additional insured for damages because of bodily injury arising from the allegedly negligent loading of the former's vehicle. There the court distinguished the language of the policy ("any person") from provisions construed in other cases ("liability to pay damages to others") and explained that the latter provision "was understandably held to limit coverage to claims by others than the named or additional insured." (*Id.* at p. 153.) In *P. E. O'Hair & Co.* v. *Allstate Ins. Co.* (1968) 267 Cal.App.2d 195 [72 Cal.Rptr. 690], on facts parallel to *Norwich, supra,* the court held that the insurer was required to indemnify an additional insured for liability to the named insured. Finally, the majority appear to rely on *Farmers Ins. Exch.* v. *Frederick* (1966) 244 Cal.App.2d 776 [53 Cal.Rptr. 457], holding that the policy covered liability for injury to the named insured, but it too involved the application of the term "any person" in the insuring clause. (*Id.* at pp. 778, 782.)

Cases cited by the majority for the proposition that clauses excluding liability for injuries to employees of the insured will be construed to withhold coverage only as to injuries sustained by an employee of the *"particular* insured . . . seeking protection under the policy" are not in point. (Original italics.) (*Pleasant Valley Assn.* v. *Cal-Farm Ins. Co.* (1956)

142 Cal.App.2d 126, 132 [298 P.2d 109]; see also *Paul Masson Co.* v. *Colonial Ins. Co.* (1971) 14 Cal.App.3d 265, 270 [92 Cal.Rptr. 463]; *Campidonica* v. *Transport Indemnity Co.* (1963) 217 Cal.App 2d 403, 407 [31 Cal.Rptr. 735].) Limiting the scope of an exclusion for injuries to an employee of a particular insured seeking the protection of the policy may be viewed as depending on an employment *relationship* which, in situations where a person is not the employee of the party facing liability, is irrelevant. By contrast, in the cases before us, application of the exclusion to an insured depends on *status* under the definitions given in the policy. The status of a named insured, however, unlike an employment relationship, does not become irrelevant merely because the named insured brings an action against his permissive user. The policy defines a named insured as that person designated by name on the face of the policy and it does not limit that status to particular situations. Thus, the named insured retains that status whether he is the driver of the vehicle or is merely an occupant.

The majority attempt to distinguish these cases at bench from *Travelers Indem. Co.* v. *Colonial Ins. Co.* (1966) 242 Cal.App.2d 227 [51 Cal.Rptr. 724]. There the policy obligated the insurer to indemnify the insured for liability attributable to bodily injury or death "suffered by any person or persons, *other than the insured or his employees* . . . ." (*Id.* at p. 234; original italics.) The named insured was injured when an additional insured, while loading steel beams on the named insured's vehicle, negligently caused a steel beam to strike the named insured. The court held that the insuring clause "excluded from coverage claims [for bodily injury] by its named insured." (*Id.* at p. 235.) The insuring clause in the instant cases is no less unambiguous than the insuring agreement in *Travelers*. A juxtaposition of contrasting terms is present in the insuring clauses of both cases: The term "other persons" or "other than the insured" is stated with reference to its antecedent term, "insured" or "any person or persons."

The insuring clause, therefore, in the policy before us unmistakably affords no coverage for claims made by the named insured for his own bodily injuries or to the heirs of such insured in a wrongful death action (see *Farmers Ins. Exch.* v. *Brown* (1967) 252 Cal.App.2d 120, 122-123 [60 Cal.Rptr. 1].) While the permissive user may therefore have no coverage for his negligence in causing injury to the owner, the realistic fact remains that such a result is commanded by the policy provisions themselves and is consistent with cases construing the language of such provisions.

Secondly, the majority argue that the exclusionary clause, which declares that the policy does not provide coverage for "bodily injury to the insured or any member of the family of the insured residing in the same

household," is not a "conspicuous, plain and clear" exclusion of coverage for bodily injury to a named insured because of some uncertainty in the term "insured." Although the policy itself defines an insured, the majority conclude that the word is ambiguous because it is susceptible of different meanings. They attach considerable significance to their belief that State Farm has advanced two possible interpretations of an "insured": that it refers to any person coming within the definition of an insured or that it means only the named insured. However, the majority have mistaken the position of State Farm. An examination of State Farm's briefs discloses that its position is simply this: that the term "insured" refers to any insured defined by the policy but, at the very least clearly includes the "named insured." With all respect to the majority, I am inclined to think they are rather hard put to it when they must attempt to wring from the briefs words to support an ambiguity.

The majority, having posited two interpretations for the exclusionary clause, attempt to explain that there are difficulties with both. (See fn. 7 of majority opn.) "Insured" cannot refer only to the named insured, they say, because in other provisions of the policy where the insurer so intended, it applied the designation "named" to the word "insured." They contend on the other hand, that if the full meaning of the term "insured" were applied, a partial redundancy occurs because the policy defines an insured as including, among other persons, any spouse or relative residing in the same household as the named insured; yet, the argument goes, the exclusionary clause not only uses the defined term "insured" but adds to it the very language ("any member of the family of the insured residing in the same household") included in the definition.

Although the latter phrase appears to be redundant, I am unable to conclude, as the majority do, that the exclusionary clause is ambiguous. This "partial redundancy" does not alter the meaning of the word "insured" defined in the policy. Nor does it justify application of the rule allowing, where "semantically permissible," a "construction as will fairly achieve [the] object of securing indemnity to the insured . . . ." (*Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 437 [296 P.2d 801, 57 A.L.R.2d 914].) In fact, the majority, despite their reference to this rule of construction, fail to apply it. They merely refer to their third assumed construction of the word "insured"—namely the permissive user seeking the protection of the policy—for which I have shown there is no constructional or legal basis whatsoever.

But, as I explained at the start, it is the *insuring* clause which is the crucial point in our inquiry and if this clause does not cover the instant

claims, any reference to the exclusionary clause is actually beside the point. As made clear, *supra,* the insuring clause plainly, clearly and unmistakably does not. The majority attempt to escape this result by changing the terms of the contract. This they may not do.

I would reverse the judgments of the trial courts.